UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN THE MATTER OF:

PATRICK N. BOSCACCY and DENA A. BOSCACCY          CASE NO. 10-11764-DWH

WHITNEY GEORGE                                    CASE NO. 10-11795-DWH

MICHAEL NUNNALLY                                  CASE NO. 10-11963-DWH

### OPINION

On consideration before the court are objections to the confirmation of the above
captioned debtors' Chapter 13 plans filed by the Chapter 13 trustee ("trustee"); responses to the
objections having been filed by said debtors; and the court, having heard and considered same,
hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to these proceedings
pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. These are core contested proceedings as
defined in 28 U.S.C. §157(b)(2)(A), (L), and (O).

II.

In each of the above captioned cases, the trustee's objections to confirmation are based on
the specific issue of whether a Chapter 13 plan may be confirmed if the plan proponent
separately classifies an unsecured student loan debt and treats that debt more favorably than the
claims of other general unsecured creditors. In their plans, the debtors proposed to cure the
existing defaults in their student loan obligations and maintain their future payments in keeping
with the loan terms as contemplated by 11 U.S.C. §1322(b)(5). Over their respective terms, the

debtors' plans would bring the student loan obligations current, but at the same time, would necessitate greater payments to the student loan creditors than the payments proposed to the general unsecured creditor classes.

III.

The following is a recitation of the relevant factual circumstances that are pertinent to each of the above captioned cases:

There is apparently no dispute that in each case the debtor(s) are committing their full projected disposable income to the plan payments.

A.

Name: Patrick N. Boscaccy and Dena A. Boscaccy

Proposed life of the Chapter 13 Plan: 36 months

Total student loan debt: $29,068.00

Type of student loan(s): Sallie Mae and U.S. Department of Education

Proposed monthly payment on the student loan debt: $325.00 per month

Total unsecured debt, excluding the student loan debt: $27,596.46

Proposed monthly payment to unsecured creditors: - 0 -

Calculation of differential treatment if the student loan
payment was included to pay all unsecured creditors,
including the student loan creditor(s), equally:

2

| | |
|---|---|
| Student loan payment: | $325.00 |
| Unsecured creditors payment | .00 |
| | $325.00 |
| Multiplied by plan life | 36 |
| | $11,700.00 |
| Divided by total of unsecured and student loan debt | $56,664.46 |
| % of distribution | 21% |

In this case, if the payment proposed for the student loans was paid equally to all unsecured creditors, including the student loan creditors, all of these creditors would receive a distribution of 21%. This must be compared to the debtors' proposal to pay the unsecured creditors nothing, excluding the student loan creditors.

B.

Name: Whitney George

Proposed life of the Chapter 13 Plan: 36 months

Total student loan debt: $8,500.00

Type of student loan(s): Sallie Mae

Proposed monthly payment on the student loan debt: $374.00 per month

Total unsecured debt, excluding the student loan debt: $40,497.00

Proposed monthly payment to unsecured creditors: $112.44 per month (10% distribution)

Calculation of differential treatment if the student loan
payment was included to pay all unsecured creditors,
including the student loan creditor(s), equally:

| | |
|---|---|
| Student loan payment: | $374.00 |
| Unsecured creditors payment | 112.44 |
| | $486.44 |
| Multiplied by plan life | 36 |
| | $17,511.84 |
| Divided by total of unsecured and student loan debt | $48,997.00 |
| % distribution | 36% |

In this case, if the student loan payment and the payment to the remaining unsecured creditors were pooled, each creditor would receive a 36% distribution over the life of the Chapter 13 plan. Insofar as the general unsecured creditors are concerned, who would originally receive a 10% distribution pursuant to the debtor's proposed plan, this amounts to a 26% increase.

### C.

Name: Michael Nunnally

Proposed life of the Chapter 13 Plan: 60 months

Total student loan debt: $9,352.22

Type of student loan(s): U.S. Department of Education

Proposed monthly payment on the student loan debt: $155.87 per month

Total unsecured debt, excluding the student loan debt: $2,377.75

Proposed monthly payment to unsecured creditors: - 0 -

Calculation of differential treatment if the student loan payment was included to pay all unsecured creditors, including the student loan creditor(s), equally:

4

| | |
|---|---:|
| Student loan payment: | $155.87 |
| Unsecured creditors payment | .00 |
| | $155.87 |
| Multiplied by plan life | 60 |
| | $9,352.20 |
| Divided by total of unsecured and student loan debt | $11,729.97 |
| % distribution | 80% |

In this case, if the payment proposed for the student loan creditor was allocated to all unsecured creditors, including the student loan creditor, over the life of the Chapter 13 plan each creditor would receive an 80% distribution.

The aforementioned examination of each of the above captioned cases ironically reveals remarkable variances in the factual circumstances. In the first case, the student loan debt and the balance of the other unsecured debts are relatively close in total amounts, and are both sizeable numbers. In the second case, the student loan debt is substantially less than the other unsecured debts. In the third case, the student loan debt is almost four times the size of the total of the other unsecured debts. Consequently, each case will have to be considered on its own particular merits.

IV.

The trustee's argument is that the debtors' proposals constitute unfair discrimination which is prohibited by 11 U.S.C. §1322(b)(1).[1] The debtors' position is that, regardless of §1322(b)(1), they are allowed to separately classify and treat their student loans as proposed pursuant to the "cure and maintain" provision set forth in §1322(b)(5).

---

[1] All further sectional references shall be to Title 11 of the United States Bankruptcy Code.

5

§1322(b), in its entirety, provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may –
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of
> this title, but may not discriminate unfairly against any class so designated;
> however, such plan may treat claims for a consumer debt of the debtor if an
> individual is liable on such consumer debt with the debtor differently than other
> unsecured claims,
> (2) modify the rights of holders of secured claims, other than a claim secured only
> by a security interest in real property that is the debtor's principal residence, or of
> holders of unsecured claims, or leave unaffected the rights of holders of any class
> of claims;
> (3) provide for the curing or waiving of any default;
> (4) provide for payments on any unsecured claim to be made concurrently with
> payments on any secured claim or any other unsecured claim;
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any
> default within a reasonable time and maintenance of payments while the case is
> pending on any unsecured claim or secured claim on which the last payment is
> due after the date on which the final payment under the plan is due;
> . . . .

In support of her position, the trustee reasons that even though §1322(b)(5) allows a

debtor to cure any default within a reasonable time and maintain payments while the case is

pending on any unsecured claim on which the last payment is due after the date on which the

final payment under the plan is due, §1322(b)(1) is not superseded by §1322(b)(5). According to

the trustee, both sections mutually exist, and (b)(5) cannot be read in isolation. She asserts

further that by its language (b)(5) only "trumps" (b)(2), but not (b)(1). While she is correct on

these points, the trustee apparently also believes that "any" discrimination is "unfair"

discrimination, but that is not what the statute says. The word "unfairly" obviously has meaning

when it refers to "discriminate"; otherwise, it would have been excluded from (b)(1). In

addition, (b)(5), which is not expressly "trumped" by (b)(1), unambiguously provides that a

debtor can cure and maintain an unsecured debt on which the payments extend beyond the life of

the plan.

6

The trustee relies on *In re Harding*, 423 B.R. 568 (Bankr. S.D. Fl. 2010), where the court

analyzed statutory construction principles, and reviewed the legislative history of §1322(b)(2)

and §1322(b)(5). The *Harding* court concluded that the debtor's plan, separately treating her

student loan debt pursuant to §1322(b)(5), unfairly discriminated against the class of unsecured

creditors in violation of §1322(b)(1). *Id.* at 578. Although the ultimate decision in *Harding*

favored the trustee's no discrimination position, the court's analysis and discussion did not

necessarily do so. The court determined that §1322(b)(1) and §1322(b)(5) must be read together,

effectively concluding that the "cure and maintain" long-term debt treatment could be employed

if it did not "unfairly" discriminate. Significantly, the court also concluded that the automatic

stay prohibited the student loan creditor from assessing penalties for payment shortfalls occurring

while the Chapter 13 debtor was in bankruptcy, and that the debtor's Chapter 13 discharge would

relieve her of any personal obligation for such penalties should the student loan creditor ever

attempt to assess them in the future based solely on the fact that its pro rata Chapter 13 plan

distributions were less than the minimum monthly payments to which it would otherwise be

contractually entitled over the life of the plan. *Id.* at 577. In commenting on what would be

considered "unfair" discrimination, Judge Olson quoted from *In re Machado,* 378 B.R. 14

(Bankr. D. Mass. 2007), as follows:

> In determining whether any such discrimination is fair or not, courts consider various
> factors, applied to the circumstances of each particular case. These cases are variously
> formulated but bear upon the equitable allocation of plan resources and the furtherance of
> underlying policy objectives.

*In re Machado*, 378 B.R. at 16.

*Harding*, 423 B.R. at 574 - 75.

7

In commenting on the fact that student loan obligations are non-dischargeable in both

Chapter 13 and Chapter 7 bankruptcy cases, the court agreed with the general view that

discrimination based <u>solely</u> on nondischargeability is unfair.  The court added, however, that

nondischargeability must nonetheless factor into the fairness analysis.  *In re Harding*, 423 B.R. at

575.  Judge Olson also indicated that the particular facts and circumstances of each case should

dictate whether the proposed discrimination is fair.  He added that this determination requires a

fair balancing of:

    (1)    The debtor's fresh start;

    (2)    The clear legislative objective of student loan repayment; and

    (3)    Fair treatment of creditors as a whole.

*Id.*

This court has long been of the opinion that, under most circumstances, debtors may

"cure and maintain" their student loan obligations pursuant to §1322(b)(5), <u>if the discrimination</u>

<u>mentioned in §1322(b)(1) is not "unfair."</u>  "The right to cure defaults on long term contracts

applies to all long term debt and thus covers contracts such as land installment sale agreements,

as well as, mortgages.  It can also be used, at the debtor's option, to cure defaults on unsecured

debts such as student loans..." Vol. 8, Collier on Bankruptcy ¶1322.09[2] (Alan N. Resnick &

Harry J. Sommer eds., 16th ed.) *See, In re Truss,* 404 B.R. 329 (Bankr. E.D. Wisc. 2009); *In re*

*Cox*, 186 B.R. 744 (Bankr. N.D. Fla. 1995); *In re Benner*, 156 B.R. 631 (Bankr. Minn. 1993).

Several courts around the country have fashioned tests to determine whether the

discrimination is "unfair:" *See, In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991), which offered a

four prong test: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can

8

carry out the plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis for such discrimination; *In re Wolff*, 22 B.R. 510 (9th Cir. BAP 1982); *In re Gregg*, 179 B.R. 828 (Bankr. E.D. Tex. 1995), which devised a slightly modified four prong test: (1) whether the discrimination has a reasonable basis; (2) whether such classification is necessary for the debtor's rehabilitation in a Chapter 13 bankruptcy; (3) whether the discrimination was proposed in good faith; and (4) whether the degree of differential treatment is related to the basis for the discrimination, (citing *In re Freshley*, 69 B.R. 96, 97 (Bankr. N.D. Ga. 1987)); and *In re Etheridge*, 297 B.R. 810 (Bankr. M.D. Ala. 2003), which held that the determination of "unfair" discrimination must be made on a case by case basis.

The court in *In re Gregg, supra*, concluded that student loans may be separately classified pursuant to §1322(b)(5), because the plan proposal did not rise to the level of unfair discrimination prohibited by §1322(b)(1). *Gregg*, 179 B.R. at 830.

V.

There have been numerous opinions written discussing "unfair" discrimination in the treatment of student loan obligations in a Chapter 13 context. In addition to the above comments from the *Harding* decision, the court would mention several others that offer particular insight.

In *In re Orawsky*, 387 B.R. 128 (Bankr. E.D. Penn. 2008), Judge Eric Frank provided a thoughtful discussion of the several tests that had been devised over the country to determine whether the proposed discrimination was "unfair." Judge Frank applied the Bentley test, devised in *In re Bentley*, 266 B.R. 229 (1st Cir. BAP 2001), and permitted the debtor to separately classify her student loan debt and treat it more favorably than the claims of the other unsecured creditors.

9

He recognized that while there was some discrimination present, it did not rise to the level of

"unfair" discrimination. Interestingly, in the opinion, the court included excerpts from a law

journal article, Stephen L Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am.

Bankr. L.J. 341, B 47-49 (Fall 2000), which commented, somewhat unfavorably, on the

effectiveness of the aforementioned four pronged tests. *Id.* at 140-48.

In *In the Matter of Freeman*, 2006 WL 6589023 (Bankr. N.D. Ga. 2006), the debtor

proposed to make regular monthly payments of principal and interest on a student loan directly to

the creditor while the other unsecured creditors were to receive payments of only one percent of

their claims. The Chapter 13 trustee objected to the confirmation of the debtor's plan asserting

that it violated §1322(b)(10) of the Bankruptcy Code, which prohibits payments of post-petition

interest on an unsecured, non-dischargeable debt unless the debtor proposes to pay all other

allowed claims in full. While this section has not been raised by either party in the subject

proceeding, Judge Homer Drake's insightful comments merit inclusion in this discussion. The

following is extracted from the *Freeman* opinion:

> The trustee argues that section 1322(b)(10) is the more specific provision because it
> directly prohibits the payment of interest on unsecured debts that are nondischargeable,
> absent full payment to other unsecured creditors, and because, even when section
> 1322(b)(10) is applicable, section 1322(b)(5) remains available to debtors to cure and
> maintain (through the payment of interest) debts that are not nondischargeable. This
> argument has two flaws. First, if a debtor chooses to cure and maintain a long-term debt,
> the debt becomes nondischargeable under section 1328(a)(1). Accordingly, if the Trustee
> is correct that section 1322(b)(10) should be considered an exception to section
> 1322(b)(5), it is an exception that swallows the rule. In other words, it would be
> impossible for a debtor to pay interest on a long-term debt as part of a cure and
> maintenance of that debt under section 1322(b)(5), even if the debt is not
> nondischargeable under any provision of section 523(a). Second, one could just as easily
> argue that section 1322(b)(5) is the more specific provision because not all
> nondischargeable debts are entitled to be cured and maintained in accordance with section
> 1322(b)(5), but only those with payment terms that extend beyond the plan term. This
> leaves a large realm of nondischargeable, short-term debts to which section 1322(b)(10)

would continue to apply if section 1322(b)(5) constitutes an exception to section 1322(b)(10.

Having considered the various arguments, the Court concludes that Congress intended to permit the cure and maintenance of long-term unsecured debts, notwithstanding the applicability of section 1322(b)(10). As noted above, prohibiting the payment of interest on nondischargeable debts would make the cure and maintenance of any long-term debt impermissible. Such a result could not have been intended by Congress.

*Id.* at *2.

In a footnote, Judge Drake observed that although the Chapter 13 trustee had not objected

to the debtor's proposed plan on the basis that the direct payment of the student loan debt

unfairly discriminated against the other unsecured creditors and was prohibited by section

1322(b)(1), he indicated that curing and maintaining a long-term student loan debt generally did

not unfairly discriminate against a debtor's other unsecured creditors. *Id.*

Judge Margaret Murphy adopted Judge Drake's *Freeman* analysis regarding §1322(b)(10)

in *In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007). In *Webb*, the debtors proposed to cure and

maintain their nondischargeable, long-term student loan debt, while paying a distribution of only

one percent to their other general unsecured creditors. Judge Murphy addressed the interplay

between §1322(b)(1) and §1322(b)(5), and overruled the trustee's objection to confirmation. In

her analysis, Judge Murphy offered the following comments:

....The minority view excepts long-term loan obligations (*i.e.*, for which the payment period extends beyond the life of the plan) from the unfair discrimination analysis under 1322(b)(1). *See In re Jackson*, Case No. 05-85212, P. 4 (Bankr. N.D. Ga. 2006) (J. Mullins), *citing In re Williams*, 253 B.R. 220 (Bankr. W.D. Tenn. 2000); *In re Benner*, 156 B.R. 631 (Bankr. D. Minn. 1993). Courts that have accepted the minority position permit the debtor's plan to cure defaults and maintain contract payments on long-term unsecured debt even when other unsecured debt will receive less than full payment.

. . . .

The majority position requires plans that provide full payment of student loan obligations under §1322(b)(5) to undergo unfair discrimination analysis. *In re Simmons*, 288 B.R. 737, 744 (Bankr. N.D. Tex. 2003). The majority position further concludes that

11

nondischargeability, by itself, is insufficient reason to permit debtors to discriminate against other unsecured claims. *Id. See also, In re Mulkey*, 2005 WL 4659360, 2005 Bankr Lexis 2188 (Bankr. N.D. Ga. 2005)(J. Massey). Assuming without deciding the majority position is correct, a determination of whether Debtor's plan discriminates unfairly is appropriate.

The most widely-used test to determine whether a plan discriminates unfairly, found in the case of *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991), has four components: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*In re Webb*, 370 B.R. at 422-23.

Recognizing the tension between the fact that student loan debts are nondischargeable, which obviously indicates a Congressional intent that these debts should be paid, with the fact that Chapter 13 debtors are prohibited from unfairly discriminating between the payment of these debts and other general unsecured debts, coupled with the fact that it was Congress's intent to encourage debtors to file Chapter 13 bankruptcy cases, Judge Murphy offered the following comment:

> The choice Congress made to endow student loan debt with nondischargeable status sends a strong signal of intent that should not be easily ignored. Balancing the major policies of Chapter 13, including the fresh start, and the strong intent of Congress to elevate the payment status of student loans leads to the conclusion that the only logical way in this case to implement both policies is to allow Debtors' plan to be confirmed. This conclusion is, however, limited to the specific facts in this case and other cases may present other facts that would require further inquiry or lead to a different conclusion.

*Id.* at 426.

Finally, this court is of the opinion that the following observations by Judge James Yacos in *In re Chandler*, 210 B.R. 898 (Bankr. D. N.H. 1997), reflect the general consensus of opinions across the country, to-wit:

12

This Court rules, as a matter of law, that to the extent that the debtors' proposed separate classification of their student loan debt from their other unsecured debts is put forward on the basis that the student loan debt is nondischargeable, that basis for differing treatment constitutes unfair discrimination within the meaning of section 1322(b)(1) of the Bankruptcy Code.

*Id.* at 902-03.

Reviewing section 1322(b)(1), the Court finds that it does not prevent discrimination. Rather, section 1322(b)(1) prevents "unfair" discrimination. The Court holds that placing unsecured creditors, like those holding student loans, into a separate class and permitting debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not "unfair" discrimination. This must be the result intended by Congress; otherwise, how could a debtor's plan provide for the "maintenance of payments" on "unsecured" claims under section 1322(b)(5) if it were considered "unfair discrimination" under section 1322(b)(1). In order to give meaning to both subsections, the Court finds that the discrimination proposed by the debtors in this case is not unfair.

*Id.* at 904.

Considering what this court believes to be the prevailing state of the law regarding the separate treatment of student loan obligations, a determination will be made in each case as to whether the proposed discrimination is "unfair."

VI.

Bankruptcy law generally allows debtors to discharge their pre-bankruptcy debts. In the past, this principal was applicable to student loans. In October, 1979, the Bankruptcy Code became effective, replacing the former Bankruptcy Act, and made student loans dischargeable under a stricter set of circumstances. Congress enacted this change on the perceived belief that debtors, who had obtained student loans and made no attempts at repayment with no extenuating circumstances, had abused the bankruptcy system. This occurred even though a study conducted by the General Accounting Office showed that less than one percent of all federally insured guaranteed student loans had been discharged through the bankruptcy system. Rafael I. Pardo

13

and Michelle R. Lacey, *The Real Student-Loan Scandal: Undue Hardship Discharge*, 83 Am.
Bankr. L.J. 179, 180-81 (Winter 2009).

Congress has continued to modify and constrict the relief that is available to student loan
borrowers through a bankruptcy filing. The most recent change came in 2005 when The
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) was enacted.
As a result of BAPCPA, private "for-profit" lenders gained the special treatment that had
previously been accorded only to educational and nonprofit institutions. *Id.* at 181. One major
change was the inclusion of private student loans in the exceptions to discharge section of the
Bankruptcy Code, §523(a)(8). As Pardo and Lacey pointed out, this legislation opened the door
to what some have described as the "wild west"[2] of the student loan industry. The private student
loan market originated $17.3 billion in loans during the 2005-2006 academic year. *Id.*
According to Mark Kantrowitz, publisher of FinAid.org, that number increased to a total of
$167.8 billion in private student loans in 2010.

The total student loan debt in the United States now surpasses what Americans owe in
revolving credit debt (most of which is credit card debt), according to the June, 2010 figures
from the Federal Reserve.[3] Due to the lack of regulation of private lenders, students are not
limited as to the amounts that can be borrowed. There are no programs to reduce or defer
payments, and, significantly, no caps on interest rates. Indeed, insofar as most private student

---

[2]"Paying for College: The Role of Private Student Lending." Hearing before the S.
Comm. on Banking, Housing, and Urban Affairs, 110th Cong. (June 6, 2007) (written testimony
of Andrew Cuomo, State of NY Atty. Gen at 3).

[3]Mary Pilon, *Student-Loan Debt Surpasses Credit Cards - Real Time Economics*, Wall St.
J., Aug. 9, 2010; *see also,* Fed. Reserve Bd. G.19 Release - Consumer Credit, Sept. 8, 2010.

loans are concerned, the primary factor that distinguishes these loans from any other loans in the

private market is that the borrower is a student of some description. The proceeds of these loans

can be used for practically any purpose.

As a result of what has transpired in the student loan industry in the past few years,

Senator Richard Durbin has spearheaded a movement with some of his colleagues in the Senate

and House of Representatives to introduce legislation that would restore fairness in student

lending. One goal is to insure that the proceeds obtained from the student loans are actually used

for educational purposes.

## VII.

Adding a bit of humor about the uncertainty of this speculative exercise, the court in *In re*

*Orawsky, supra,* offered the following:

> ....courts have been left to struggle to formulate a feasible, practical, reasoned approach in
> applying the "unfair" discrimination restriction of §1322(b)(1). As a result of these
> efforts, an array of different tests have been articulated, critiqued, rejected and re-
> formulated over the years. One early court, after observing that decisions on the issue of
> what constituted "unfair" discrimination ran the "gamut from everything goes to nothing
> is allowed," was led to conclude that "somewhere between total whim and an Act of God
> lies the answer to what justification is needed to hew out a particular class of unsecured
> creditors and distinguish it from other unsecured creditors." *In re Hill*, 4 B.R. 694, 697-
> 698 (Bankr. D. Kan. 1980).

*In re Orawsky*, 387 B.R. at 141.

In the Boscaccy case, the debtors proposed to pay $325.00 per month to maintain their

student loan obligation which is in the total sum of $29,068.00. If these funds were utilized to

pay all unsecured creditors equally, including the student loan creditors, there would be a 21%

distribution to the entire unsecured creditor class. This must be compared to the 0% distribution

that the debtors proposed in their current Chapter 13 plan for just the general unsecured creditors.

15

If this were a Chapter 7 bankruptcy case, the unsecured creditors would likely receive nothing. If the debtors are not permitted to maintain the payments on their sizeable student loan debts, the interest accrual on these debts during the life of their Chapter 13 plan will likely render their bankruptcy filing meaningless. Consequently, although there will be discrimination against the general unsecured creditor class under the debtors' proposal, considering the totality of the circumstances, this discrimination is not considered "unfair" by the court. As such, the trustee's objection to confirmation of the Boscaccys' Chapter 13 plan is not well taken and it will be overruled.

In the George case, the debtor is paying $374.00 per month for 36 months to maintain a student loan indebtedness in the total sum of $8,500.00. At the same time, the debtor has proposed to pay the general unsecured class $112.44 per month which provides a 10% distribution for claims totaling $40,497.00. If the student loan payments were utilized to pay all unsecured creditors equally, including the student loan creditor, each creditor would receive a 36% distribution. For the general unsecured creditors, this amounts to a 26% increase. If this were a Chapter 7 case, the unsecured creditors would likely receive nothing. Since the monthly student loan payment is relatively substantial, if it were not permitted to be made, the debtor would emerge from bankruptcy, insofar as this nondischargeable debt is concerned, in a much worse position than the debtor was in prior to filing. Consequently, the court is of the opinion that the debtor's proposal does not constitute "unfair" discrimination, and the trustee's objection to confirmation will be overruled.

In the Nunnally case, if the payments proposed for the student loan creditor were allocated to all unsecured creditors, including the student loan creditor, each creditor would

16

receive an 80% distribution. This percentage increase is so dramatic because the general

unsecured debt total is relatively low compared to the amount of the student loan debt. If all

creditors were treated equally, the student loan payment would only be reduced 20%, while the

distribution to the general unsecured creditors would be increased by 80%. As such, the court is

of the opinion that the debtor's proposal does indeed constitute unfair discrimination. The

trustee's objection to confirmation will be sustained. If the debtor wishes to achieve

confirmation, he must agree to pay the student loan creditor and the general unsecured creditors

on an equal basis.

In each of the aforementioned three cases, this court will adopt the guidance provided by

*In re Harding, supra*, where the court concluded that the automatic stay prohibited the student

loan creditor from assessing penalties for payment shortfalls occurring while the Chapter 13

debtor was in bankruptcy. In addition, the debtors' Chapter 13 discharges will relieve them of

any personal obligation for any such penalties should the student loan creditors ever attempt to

assess them in the future.

Separate orders, consistent with this opinion, shall be entered contemporaneously

herewith.

This the _18th_ day of October, 2010.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE